# United States Court of Appeals

*for the*

# First Circuit

Case No. 15-1218

FRANKLIN CALIFORNIA TAX-FREE TRUST; FRANKLIN NEW YORK
TAX-FREE TRUST; FRANKLIN TAX-FREE TRUST; FRANKLIN
MUNICIPAL SECURITIES TRUST; FRANKLIN CALIFORNIA TAX-FREE
INCOME FUND; FRANKLIN NEW YORK TAX-FREE INCOME FUND;
FRANKLIN FEDERAL TAX-FREE INCOME FUND; OPPENHEIMER
ROCHESTER FUND MUNICIPALS; OPPENHEIMER MUNICIPAL FUND;
OPPENHEIMER MULTI-STATE MUNICIPAL TRUST; OPPENHEIMER
ROCHESTER OHIO MUNICIPAL FUND; OPPENHEIMER ROCHESTER
ARIZONA MUNICIPAL FUND; OPPENHEIMER ROCHESTER VIRGINIA
MUNICIPAL FUND; OPPENHEIMER ROCHESTER MARYLAND
MUNICIPAL FUND; OPPENHEIMER ROCHESTER LIMITED TERM
CALIFORNIA MUNICIPAL FUND; OPPENHEIMER ROCHESTER
CALIFORNIA MUNICIPAL FUND;

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT OF PUERTO RICO, SAN JUAN

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS
## MELBA ACOSTA-FEBO IN 15-1271 AND JOHN DOE IN 15-1272

JOHN E. ROBERTS
ANDREA G. MILLER
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, Massachusetts 02110
(617) 526-9600

MARTIN J. BIENENSTOCK
MARK D. HARRIS
SIGAL P. MANDELKER
PHILIP M. ABELSON
EHUD BARAK
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendants-Appellants Melba Acosta-Febo and John Doe*

ROCHESTER PORTFOLIO SERIES; OPPENHEIMER ROCHESTER AMT-FREE MUNICIPAL FUND; OPPENHEIMER ROCHESTER AMT-FREE NEW YORK MUNICIPAL FUND; OPPENHEIMER ROCHESTER MICHIGAN MUNICIPAL FUND; OPPENHEIMER ROCHESTER MASSACHUSETTS MUNICIPAL FUND; OPPENHEIMER ROCHESTER NORTH CAROLINA MUNICIPAL FUND; OPPENHEIMER ROCHESTER MINNESOTA MUNICIPAL FUND,

*Plaintiffs-Appellees,*

v.

COMMONWEALTH OF PUERTO RICO; ALEJANDRO GARCIA-PADILLA, as Governor Of the Commonwealth of Puerto Rico,

*Defendants-Appellants,*

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); MELBA ACOSTA, as Government Development Bank for Puerto Rico Agent; JOHN DOE,

*Defendants.*

_____

Case No. 15-1221

BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC, for and on behalf of investment funds for which it acts as investment manager,

*Plaintiff-Appellee,*

v.

ALEJANDRO GARCIA-PADILLA, in his official capacity as Governor of Puerto Rico; CESAR R. MIRANDA-RODRIGUEZ, in his official capacity as Secretary of Justice of the Commonwealth of Puerto Rico,

*Defendants-Appellants,*

JOHN DOE, in his official capacity as employee or agent of the Government of Puerto Rico Development Bank for Puerto Rico,

*Defendant.*

_____

Case No. 15-1271

FRANKLIN CALIFORNIA TAX-FREE TRUST; FRANKLIN NEW YORK TAX-FREE TRUST; FRANKLIN TAX-FREE TRUST; FRANKLIN MUNICIPAL SECURITIES TRUST; FRANKLIN CALIFORNIA TAX-FREE INCOME FUND; FRANKLIN NEW YORK TAX-FREE INCOME FUND; FRANKLIN FEDERAL TAX-FREE INCOME FUND; OPPENHEIMER ROCHESTER FUND MUNICIPALS; OPPENHEIMER MUNICIPAL FUND; OPPENHEIMER MULTI-STATE MUNICIPAL TRUST; OPPENHEIMER ROCHESTER OHIO MUNICIPAL FUND; OPPENHEIMER ROCHESTER

ARIZONA MUNICIPAL FUND; OPPENHEIMER ROCHESTER VIRGINIA
MUNICIPAL FUND; OPPENHEIMER ROCHESTER MARYLAND
MUNICIPAL FUND; OPPENHEIMER ROCHESTER LIMITED TERM
CALIFORNIA MUNICIPAL FUND; OPPENHEIMER ROCHESTER
CALIFORNIA MUNICIPAL FUND; ROCHESTER PORTFOLIO SERIES;
OPPENHEIMER ROCHESTER AMT-FREE MUNICIPAL FUND;
OPPENHEIMER ROCHESTER AMT-FREE NEW YORK MUNICIPAL
FUND; OPPENHEIMER ROCHESTER MICHIGAN MUNICIPAL FUND;
OPPENHEIMER ROCHESTER MASSACHUSETTS MUNICIPAL FUND;
OPPENHEIMER ROCHESTER NORTH CAROLINA MUNICIPAL FUND;
OPPENHEIMER ROCHESTER MINNESOTA MUNICIPAL FUND,

*Plaintiffs-Appellees,*

v.

MELBA ACOSTA-FEBO, as Government Development Bank for
Puerto Rico Agent,

*Defendant-Appellant,*

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA);
COMMONWEALTH OF PUERTO RICO; ALEJANDRO GARCIA-PADILLA,
as Governor of the Commonwealth of Puerto Rico,

*Defendants.*

---

Case No. 15-1272

BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC, for and on behalf of
investment funds for which it acts as investment manager,

*Plaintiff-Appellee,*

v.

JOHN DOE, in his official capacity as employee or agent of the Government of
Puerto Rico Development Bank for Puerto Rico,

*Defendant-Appellant,*

ALEJANDRO GARCIA-PADILLA, in his official capacity as Governor of
Puerto Rico; CESAR R. MIRANDA-RODRIGUEZ, in his official capacity as
Secretary of Justice of the Commonwealth of Puerto Rico,

*Defendants.*

# **Table of Contents**

**Page(s)**

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ..........................................................................................3

    I.     Section 903 Does Not Preempt the Recovery Act. ..............................3

          A.    Section 903 by its Plain Terms Does Not Apply to Puerto Rico's Municipalities. ...............................................................3

          B.    Application of Statutory Definitions is Not Optional................4

          C.    The Statutory Meaning of Section 903 Does Not Lead to Any Absurd Result................................................................6

          D.    Section 903 Cannot Apply Outside a Pending Bankruptcy Case. ................................................................................12

          E.    Plaintiffs' Claim that the Bankruptcy Code Uses "Creditor" Outside its Defined Meaning is Demonstrably Wrong.............14

          F.    Even if the Construction of Section 903(1) Presented a Close Question (Which It Does Not), the Presumption Against Preemption Controls. ........................................................17

          G.    Plaintiffs' Other Attempts to Evade the Plain Language of Section 903 Similarly Fail. ....................................................20

    II.    The Legislative History Does Not Support Plaintiffs' Position..........23

          A.    Plaintiffs Focus on the Wrong Legislative History. .................23

          B.    Plaintiffs Mischaracterize the Legislative History. ..................25

    III.    The Recovery Act is Not Barred by Field Preemption. ......................27

CONCLUSION .....................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978).............................................................18

*Antilles Cement Corp. v. Fortuño*,
    670 F.3d 310 (1st Cir. 2012)...............................................17

*Arizona v. United States*,
    132 S. Ct. 2492 (2012).........................................................27

*Ashton v. Cameron Cnty. Water Improvement Dist. No. 1*,
    298 U.S. 513 (1936).............................................................9

*Butler v. Goreley*,
    146 U.S. 303 (1892).............................................................28

*City of Pontiac Retired Emps. Ass'n v. Schimmel*,
    751 F.3d 427 (6th Cir. 2014) ..............................................13

*Cohen v. de la Cruz*,
    523 U.S. 213 (1998).............................................................24

*Doty v. Love*,
    295 U.S. 64 (1935)...............................................................28

*Faitoute Iron & Steel Co. v. City of Asbury Park, N.J.*,
    316 U.S. 502 (1942)......................................................passim

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000).............................................................14

*Hartford Underwriters Ins. Co. v. Union Planters Bank*,
    530 U.S. 1 (2000).................................................................6

*Home Bldg. & Loan Ass'n v. Blaisdell*,
    290 U.S. 398 (1934).............................................................18

*In re Federal-Mogul Global Inc.*,
   684 F.3d 355 (3d Cir. 2012) .......................................................................19, 24

*In re Weinstein*,
   164 F.3d 677 (1st Cir. 1999)....................................................................29

*Int'l Shoe Co. v. Pinkus*,
   278 U.S. 261 (1929).............................................................................28, 29

*Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*,
   124 F.3d 487 (3d Cir. 1997) ..................................................................20

*Lamie v. United States*,
   540 U.S. 526 (2004)..............................................................................23

*Mass. Ass'n of Health Maintenance Orgs. v. Ruthardt*,
   194 F.3d 176 (1st Cir. 1999)..................................................................17

*N.Y. State Restaurant Ass'n v. N.Y.C. Bd. of Health*,
   556 F.3d 114 (2d Cir. 2009) ..................................................................17

*Neblett v. Carpenter*,
   305 U.S. 297 (1938)..............................................................................28

*OMJ Pharm., Inc. v. United States*,
   753 F.3d 333 (1st Cir. 2014)....................................................................6

*Owner-Operator Indep. Drivers Assoc. v. United Van Lines, LLC*,
   556 F.3d 690 (8th Cir. 2009) ...................................................................8

*Pac. Gas & Elec. Co. v. California*,
   350 F.3d 932 (9th Cir. 2003) ..................................................................19

*Philip Morris Inc. v. Harshbarger*,
   122 F.3d 58 (1st Cir. 1997)....................................................................18

*Public Citizen v. U.S. Dep't of Justice*,
   491 U.S. 440 (1989)................................................................................7

*R.H. Herron Co. v. Superior Court*,
   68 Pac. 814 (Cal. 1902) .........................................................................28

iii

*Recovery Grp., Inc. v. Comm'r of Internal Revenue*,
  652 F.3d 122 (1st Cir. 2011)..................................................................7

*Rhode Island v. Narragansett Indian Tribe*,
  19 F.3d 685 (1st Cir. 1994)..................................................................24

*Santiago v. Puerto Rico*,
  655 F.3d 61 (1st Cir. 2011)..................................................................29

*Stenberg v. Carhart*,
  530 U.S. 914 (2000)..............................................................................5

*Sturges v. Crowninshield*,
  17 U.S. 122 (1819)..............................................................................18

*Telecomms. Regulatory Bd. of P.R. v. CTIA-Wireless Ass'n*,
  752 F.3d 60 (1st Cir. 2014)..................................................................23

*Tua v. Carriere*,
  117 U.S. 201 (1886)............................................................................28

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,
  Ltd.*,
  484 U.S. 365 (1988)............................................................................22

*United States v. Bekins*,
  304 U.S. 27 (1938)..............................................................................10

*United States v. Locke*,
  529 U.S. 89 (2000)..............................................................................20

*United States v. Roberson*,
  459 F.3d 39 (1st Cir. 2006)....................................................................5

*United States v. Smith*,
  500 F.3d 27 (1st Cir. 2007)....................................................................7

*Woburn Assocs. v. Kahn* (*In re Hemingway Transp., Inc.*),
  954 F.2d 1 (1st Cir. 1992)..................................................................16

**STATUTES**

11 U.S.C. § 101 ........................................................................passim

11 U.S.C. § 103 ...................................................................................passim

11 U.S.C. § 109 .............................................................10, 11, 14, 28

11 U.S.C. § 301 ...............................................................................15

11 U.S.C. § 303 ...............................................................................15

11 U.S.C. § 362 ...............................................................................12

11 U.S.C. § 502 ...............................................................................15

11 U.S.C. § 525 ...............................................................................12

11 U.S.C. § 528 .........................................................................12, 16

11 U.S.C. § 723 ...............................................................................15

11 U.S.C. § 901 ...................................................................1, 4, 5, 12

11 U.S.C. § 903 ...................................................................passim

11 U.S.C. § 903(1) ...................................................................passim

11 U.S.C. § 1126(c) .........................................................................11

11 U.S.C. §1129(a)(10) ....................................................................12

11 U.S.C. § 1509 ...............................................................................12

Act of July 1, 1946, ch. 532, Pub. L. No. 79-481, 60 Stat. 409, §
      83(a)-(c), (e) (1946) ...................................................................21

Puerto Rico Public Corporation Debt Enforcement and Recovery Act ...........11, 12

Recovery Act...........................................................................passim

## OTHER AUTHORITIES

43 Cong. Rec. 2011 (Feb. 6, 1909) ................................................28

H.R. Rep. No. 79-2246 (1946)........................................................26

H.R. Rep. No. 95-595 (1977)...........................................................5

*Hearings on H.R. 4307 Before the Special Subcomm. on Bankr. & Reorg. of the H. Comm. on the Judiciary*, 79th Cong. 16 (1946)......................25

Stephen J. Lubben, *Puerto Rico and the Bankruptcy Clause*, 88 Am. Bankr. L.J. 553 (2014) .........................................................................4

**PRELIMINARY STATEMENT**

After acknowledging that section 903(1) of the Bankruptcy Code would not apply to Puerto Rico's municipalities if the Code's own definitional section were followed, Plaintiffs ask this Court simply to discard the inconvenient definition.  Given that section 901(b) expressly makes those definitions binding, Plaintiffs face an uphill battle, to say the least.  And what cause do they champion?  If Plaintiffs win, not only will Puerto Rico's municipalities remain ineligible for chapter 9, but they will also be unable to invoke the Recovery Act.  As a consequence, even if other creditors agreed to concessions to enable the municipalities to survive, Plaintiffs could play the role of spoilers, capitalizing on others' sacrifices.

To launch their uphill battle in pursuit of hold-out value, Plaintiffs contend that this Court should ignore the statutory definition of "creditor."  But that is just the beginning.  At the same time as they reject one statutory definition, Plaintiffs embrace another—the provision that defines Puerto Rico as a "State," even though it is not a State.  Otherwise, section 903(1) will not apply to Puerto Rico municipalities.  Picking and choosing which statutory definitions apply and which do not, based solely on desired outcome, is both unprincipled and untethered to any legitimate canon of statutory construction.

Plaintiffs march on, but the battlefield slants ever upward. Plaintiffs argue that Congress intended section 903 to apply outside a chapter 9 case. But *none* of the Code's provisions take effect in the absence of a bankruptcy case, with the exception of two provisions explicitly so designated by Congress. Section 903 is not one of them.

Plaintiffs further seek to evade the presumption against preemption. The Supreme Court has instructed that federal statutes should not be given preemptive force unless Congress manifests a clear intent to preempt. Here, Plaintiffs' case itself proves that Congress had no such intent, because their argument depends on rejecting the statute's own definitions. Although Plaintiffs suggest that the presumption does not apply in bankruptcy cases, that position has been squarely rejected by at least two circuits.

Finding no support in the statutory text, Plaintiffs seek reinforcement from policy and legislative history. To begin with, when the statutory text is clear, as here, then resort to legislative history is improper. But even if that were otherwise, Plaintiffs' purported policy is built on allegations outside the record, and their legislative-history selections apply to a prior statute during an earlier time period when Puerto Rico's municipalities were eligible for chapter 9. Although Plaintiffs focus solely on the intentions of the 1946 Congress, the germane question in this appeal concerns what Congress intended when it made Puerto Rico municipalities

2

ineligible for chapter 9 in 1984.  On that point, there is simply no legislative history; thus, there can be no justification for disregarding the plain statutory text.

In a last-ditch effort, Plaintiffs in effect resort to the canon against statutory constructions that yield absurd results.  That canon has no application here.  To the contrary, section 903(1) serves a critical purpose: to cure the precise problem that Congress believed was created in *Faitoute Iron & Steel Co. v. City of Asbury Park, N.J.*, 316 U.S. 502 (1942).

## ARGUMENT

### I. SECTION 903 DOES NOT PREEMPT THE RECOVERY ACT.

#### A. Section 903 by its Plain Terms Does Not Apply to Puerto Rico's Municipalities.

Plaintiffs concede that when the statutory definitions are used, the Recovery Act is not preempted by section 903 of chapter 9.  *See* Franklin Opp. 21-25; BlueMountain Opp. 21, 31.  Section 903 prohibits only laws that bind nonconsenting "creditors," a term defined in the Bankruptcy Code.  11 U.S.C. § 101(10).  A number of provisions of the Bankruptcy Code—including sections 101(10)(A)-(B) and 101(13)—require that a "creditor" must have a claim against a "debtor."  A debtor, in turn, is a party against whom a Title 11 case has been commenced.  However, none of Puerto Rico's municipalities can be eligible to be a "debtor" due to Bankruptcy Code section 101(52).  As a result, no composition of

3

a municipal debt under Puerto Rico law can bind any "creditor" within the meaning of section 903(1).  *See* GDB Opening Br. 23-25.[1]

This plain meaning of section 903 is corroborated and magnified by the presumption against preemption and the context in which section 903 appears.  *See* Points I.D, I.F, *infra*.

B.    Application of Statutory Definitions Is Not Optional.

Plaintiffs urge this Court to *ignore* Congress's definition of "creditor" in favor of a definition culled from external reference materials.  But the Bankruptcy Code mandates the application of the statutory definitions created by Congress.  Indeed, section 101 of the Code specifies that "[i]n this title, the following definitions," including the definition for "creditor," "*shall* apply."  11 U.S.C. § 101 (emphasis added).  Section 901(b) further requires that any term appearing within chapter 9 "has the meaning defined for such term" in a section made applicable to

---

[1] Franklin quotes a snippet from an article referring to the use of the definitions of "creditor" and "debtor" as "mindless strict constructionism."  Franklin Opp. 31.  In context, however, the snippet squarely concludes that Plaintiffs' proposed construction must fail:

> While the obvious retort is to dismiss this sort of mindless strict constructionism, is it any less mindless to argue that Congress "clearly" intended to preempt the Recovery Act by a provision of the Bankruptcy Code that sits in a chapter that Puerto Rico can never invoke?

Stephen J. Lubben, *Puerto Rico and the Bankruptcy Clause*, 88 Am. Bankr. L.J. 553, 576 (2014).

chapter 9 by section 103(f).[2]  *Id.* § 901(b).  Section 103(f) renders chapter 1

applicable in chapter 9 cases.  *Id.* § 103(f).

It is emphatically not a court's prerogative to substitute its own definition of

a statutory term for that of Congress.  *See, e.g.*, *Stenberg v. Carhart*, 530 U.S. 914,

942 (2000) ("When a statute includes an explicit definition, we must follow that

definition, even if it varies from that term's ordinary meaning."); *United States v.*

*Roberson*, 459 F.3d 39, 53 (1st Cir. 2006).  When "creditor" is given the meaning

attributed to it by Congress, it is inarguable that the Recovery Act is not preempted

by section 903(1).

Underscoring that its proposed statutory construction lacks any discernible

principles, after insisting that this Court repudiate the statutory definition of

"creditor," Plaintiffs insist on strictly adhering to the statutory definition of "State"

to include an entity that is not a State, namely the Commonwealth of Puerto Rico.

BlueMountain Opp. 21.

Plaintiffs also cannot overcome the fact that section 903(1) does not apply to

Puerto Rico's municipalities because they are not referenced in the first portion of

section 903.  *See* GDB Opening Br. 28-30.  The initial portion of section 903

provides that "[t]his chapter does not limit or impair the power of a State to

---

[2] Section 901(b)'s reference to section 103(e) is a scrivener's error that should
reference 103(f).  *See* GDB Opening Br. 23 n.6; *see also* H.R. Rep. No. 95-595 at
394 (1977) (demonstrating reference should be to text now codified at 103(f)).

5

control, by legislation or otherwise, a municipality of or in such State . . . ." 11

U.S.C. § 903.  That opening phrase of section 903 plainly does not refer to Puerto

Rico or its municipalities because they are ineligible for "[t]his chapter" and no

provision of chapter 9 applies outside of a chapter 9 case.  Consequently, when

reference is made to "such municipality" in section 903(1), it cannot include a

Puerto Rico municipality because "such municipality" refers back to the opening

phrase of section 903.[3]

    C.    <u>The Statutory Meaning of Section 903 Does Not Lead to Any Absurd
Result.</u>

Recognizing that an interpretation of section 903 following the Bankruptcy

Code's definitions sinks their position, Plaintiffs attempt to shoehorn their way into

a narrow exception to the rule that a court must enforce the words Congress

chooses:  "When the statute's language is plain, the sole function of the courts— at

least where the disposition required by the text is not absurd—is to enforce it

according to its terms."  *Hartford Underwriters Ins. Co. v. Union Planters Bank,*

530 U.S. 1, 6 (2000) (quotation marks omitted); *OMJ Pharm., Inc. v. United

States*, 753 F.3d 333, 340 (1st Cir. 2014).

---

[3] Nor do Plaintiffs successfully refute the point that defining "State" to include
Puerto Rico "except for the purposes of defining who may be a debtor under
chapter 9" means that any reference to "municipalities" in section 903 excludes
municipalities in Puerto Rico.  *See* GDB Opening Br. 28-29.

6

The "absurd results" exception, however, is exceedingly narrow and appropriate only in "unusual cases." *Recovery Grp., Inc. v. Comm'r of Internal Revenue*, 652 F.3d 122, 125 (1st Cir. 2011). It is not sufficient that application of a statute's plain meaning leads to merely an "odd" or "incongruous" result; only if the result is truly absurd can a court jettison the plain meaning of a statute's terms. *United States v. Smith*, 500 F.3d 27, 34 (1st Cir. 2007). Indeed, a statute's plain meaning should be ignored only "where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that Congress could have intended the result, and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470-71 (1989) (Kennedy, J., concurring) (citation omitted).

None of the three purportedly "incongruous" results cited by Plaintiffs meets that stringent absurdity test. First, Plaintiffs assert that interpreting section 903 to apply only when a municipality commences a chapter 9 case would open the door to every state passing its own version of chapter 9. Franklin Opp. 19-20, 24; BlueMountain Opp. 32. That concern is unfounded: It is a longstanding principle of bankruptcy law that when Congress makes an entity eligible for federal bankruptcy relief, Congress occupies the field of bankruptcy with respect to that entity, meaning that the entity cannot invoke state bankruptcy laws. *See* Point III, *infra*. Congress has crafted chapter 9 as a means for insolvent municipalities

7

(except for those in Puerto Rico and the District of Columbia) to restructure their debt.  The States whose municipalities are eligible for chapter 9 are therefore barred by principles of field preemption from passing their own laws to protect their insolvent municipalities.[4]

Second, Plaintiffs claim that honoring the Congressional definition of "creditor" effectively neuters section 903(1).  Franklin Opp. 24; BlueMountain Opp. 35.  As an initial matter, reading statutory text to limit a statute's reach is not an "absurd result."  *See Owner-Operator Indep. Drivers Assoc. v. United Van Lines, LLC*, 556 F.3d 690, 695 (8th Cir. 2009).  But regardless, Plaintiffs are wrong that section 903(1) is rendered surplusage if "creditor" is given its statutory meaning.  As previously explained, limiting the operation of section 903(1) to chapter 9 cases is consistent with Congress's desire to ensure that municipalities in States newly eligible for chapter 9 can invoke chapter 9 despite having already arranged a composition under State law.  *See* GDB Opening Br. 38-41.  Plaintiffs' only response on this front is to contend that this scenario is unlikely.  BlueMountain Opp. 32 n.7.  But as a factual matter, this scenario mirrors what happened in *Faitoute* and is ripe for Puerto Rico's municipalities because the

---

[4] Plaintiffs' suggestion that States could avoid field preemption by not authorizing their municipalities to invoke chapter 9 fails.  The test for field preemption is whether Congress has made bankruptcy protection available to an entity, not whether the entity has met the eligibility criteria or availed itself of the opportunity.  *See* Point III, *infra*.

Recovery Act's chapter 3 imposes a serious burden on municipal debtors, which they could partially escape if later made eligible for chapter 9.  In all events, section 903(1) applies to more than a null set.

The final purported "incongruous" result claimed by Plaintiffs is that if section 903(1) applies only once a chapter 9 case commences, then section 903(1) will not overrule *Faitoute*, as Congress supposedly intended.  Franklin Opp. 22; BlueMountain Opp. 33.  Under Plaintiffs' theory, a statutory construction based on the plain language that fails to fully implement their version of Congress's intent is an absurd result.  That position flies in the face of accepted approaches to statutory construction.

In any event, limiting section 903(1) to situations in which a chapter 9 case has been commenced addresses the portion of *Faitoute* that troubled Congress.  Understanding the facts and chronology of *Faitoute* is critical.  In February 1936, Asbury Park invoked a New Jersey bankruptcy statute to restructure its debt.  Although a federal municipal bankruptcy law (chapter IX) was in effect at the time, the Supreme Court held that version of chapter IX unconstitutional later that year. *See Ashton v. Cameron Cnty. Water Improvement Dist. No. 1*, 298 U.S. 513 (1936).  New Jersey proceeded with its restructuring plan, which a state court approved on July 21, 1937.

Less than a month later, Congress enacted a revised chapter IX, which was upheld by the Supreme Court on April 25, 1938.  *See United States v. Bekins*, 304 U.S. 27 (1938).  Days later, holders of 85% of Asbury Park's debt consented to the state-law restructuring plan.  Certain of the holders who did not consent challenged the constitutionality of the state-law composition and demanded payment in full of their principal and interest.

After a state court dismissed this suit, the New Jersey Supreme Court affirmed.  The U.S. Supreme Court then affirmed the dismissal in *Faitoute*, holding, based on those facts, that the federal bankruptcy law did not preempt New Jersey's statute.

Notably, Asbury Park would have faced a problem if it had attempted to invoke chapter IX after entering into its state-law composition:  Namely, the city would not have been eligible for chapter IX because it would not have been able to plead insolvency or an inability to pay its debts as required by section 80(a) of chapter IX (currently codified as amended at section 109(c)).  Section 903(1) thus ensures that municipalities like Asbury Park that restructure under state laws enacted while federal bankruptcy protection is unavailable can later invoke chapter 9 if and when it becomes available.

This is how section 903(1) accomplishes that goal:  If holdout creditors could demand full payment of their bonds, as the holdouts in *Faitoute* did, then the

municipality would likely be able to plead an inability to pay its debts. Section

903(1) accordingly renders any state-law composition nonbinding on the holdouts

as soon as the municipality commences a chapter 9 case; thus, upon filing, the

municipality can show that it cannot pay its debts and therefore is eligible for

chapter 9 notwithstanding the local-law composition.

That is exactly the situation facing Puerto Rico's municipalities today. They

are not eligible for chapter 9 (just as there was no valid and constitutional

chapter IX available for Asbury Park), and they are hoping to pay their debts in

accordance with the Recovery Act. If a chapter 2 transaction or a chapter 3 plan

results under the Recovery Act and Congress subsequently renders Puerto Rico

municipalities eligible for chapter 9, they can avail themselves of chapter 9 and

satisfy the requirement of section 109(c) that they are insolvent within the meaning

of section 101(32)(C). Moreover, if chapter 9 becomes available, no new case

could commence under the Recovery Act due to field preemption. *See* Point III,

*infra*.

Contrary to Plaintiffs' assertion, Puerto Rico's municipalities have strong

incentives to invoke chapter 9 if it becomes available after a chapter 2 transaction

or a chapter 3 plan. For example, chapter 2 of the Recovery Act requires 75%

supermajority consent from all voting creditors. Recovery Act § 202(d)(2). That

automatically means the municipality will not obtain as much relief as it would

11

with a two-thirds requirement from just one class of creditors in chapter 9.  11

U.S.C. §§ 1126(c), 1129(a)(10) (as made applicable via § 901(a)).  Chapter 3 of the

Recovery Act also requires each municipality to pay all creditors more than

chapter 9 of the Bankruptcy Code requires, specifically half its free cash flow for

ten years *in addition to* the value of its assets.  Recovery Act § 315(d), (k).

     D.    <u>Section 903 Cannot Apply Outside a Pending Bankruptcy Case.</u>

     Neither Plaintiffs nor *amici* have cited a single case in which section 903 or

its predecessors have been applied outside a bankruptcy case, or for that matter,

where any other Bankruptcy Code provision has been applied other than in a

bankruptcy case or to enforce an order entered in a bankruptcy case.  That is no

accident.  Bankruptcy Code subsections 103(k)(2) and 362(a)-(b) are the only

instances in which Congress made a Bankruptcy Code provision apply regardless

of whether an actual bankruptcy case is pending.  Subsection 103(k)(2) expressly

provides that section 1509 applies in the absence of an actual bankruptcy case.

Likewise, subsections 362(a)-(b) expressly apply to applications filed under the

Securities Investor Protection Act of 1970.  No such language exists in the

Bankruptcy Code for section 903.[5]

---

[5] Plaintiffs also cite section 525, but its plain language shows that it applies only to protect persons from consequences of actual cases under the Bankruptcy Code. Plaintiffs' citation to section 528 likewise fails.  *See* page 16, *infra*.

Plaintiffs cite to an unpersuasive Sixth Circuit review of a denial of a preliminary injunction that suggests section 903(1) applies outside a chapter 9 case. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427 (6th Cir. 2014) (en banc). In that case, without conducting any analysis or even considering the statutory definitions, the court concluded that section 903 might not be limited to bankruptcy cases, but it also instructed that the issue be reconsidered on remand. *See* 751 F.3d at 430-33. A concurring opinion suggested that section 903 may well be limited to chapter 9 cases. *Id.* at 433-34 (McKeague, J., concurring).

Moreover, contrary to Plaintiffs' assertion, it is of no moment that section 103 provides that certain chapters and subchapters apply "only" in a case under a particular chapter, whereas section 103(f) provides that chapters 1 and 9 apply in chapter 9 cases, but does not include the "only" proviso. *See* BlueMountain Opp. 36-37; Franklin Opp. 31-32. First, chapter 1 applies in every chapter of the Bankruptcy Code, so it does not apply "only" in chapter 9. Second, the purpose of "only" in the other subsections of section 103 is to restrict the application of a chapter or subchapter to cases under certain chapters of the Bankruptcy Code. Its purpose is not to suggest that any chapter or subchapter could apply other than in an actual pending case under a chapter of the Bankruptcy Code.

At bottom, Plaintiffs would like this Court to believe that section 903(1) is an isolated provision completely divorced from the surrounding provisions of the

13

Bankruptcy Code. That is fundamental error. "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). By virtue of Congress's structuring of the Bankruptcy Code, no provision of chapter 9 is applicable outside a chapter 9 case. *See* 11 U.S.C. § 103. Accordingly, Congress's decision to locate section 903(1) within chapter 9 buttresses the conclusion compelled by the statutory text that section 903(1) does not apply in the absence of a chapter 9 case.[6]

>    E.    <u>Plaintiffs' Claim that the Bankruptcy Code Uses "Creditor" Outside its Defined Meaning Is Demonstrably Wrong.</u>

Plaintiffs further err when they argue that Congress did not really mean to define "creditor" according to section 101(10) because it used the term "creditor" in its colloquial (not defined) sense in other provisions of the Bankruptcy Code. Franklin Opp. 28-30. To the contrary, every example of the use of "creditor" in the Code cited by Plaintiffs is consistent with its statutory definition.

For example, with respect to section 109(c)(5)(A)-(D), Plaintiffs observe that a chapter 9 debtor must prove at its eligibility hearing that it has either already negotiated with creditors or had a valid excuse for not doing so. According to

---

[6] It is even more far-fetched for Plaintiffs to argue that Congress intended for section 903(1) to apply to Puerto Rico, whose municipalities can never commence a chapter 9 case. At the very least, the placement of section 903(1) within chapter 9 suggests that entities ineligible to invoke chapter 9 in the first instance do not fall within its preemptive sweep.

Plaintiffs, "creditor" in this context cannot be limited to an entity holding a claim "that arose at the time of or before the order for relief" because at the eligibility hearing no one knows whether there will ever be an order for relief. Franklin Opp. 29; BlueMountain Opp. 37. Plaintiffs are wrong. The definition of "creditor" in section 101(10)(A) is the holder of a claim against the debtor that arose at the time of or before the order for relief. "Debtor" is a municipality concerning which a case has been commenced. 11 U.S.C. § 101(13). A case is commenced by filing a petition. *Id.* § 301. Therefore, at the eligibility hearing, the case will already have been commenced and a debtor will exist. At that point, all creditors will have claims against the debtor that arose before any order for relief. It makes no difference whether an order for relief is ultimately entered.

By the same token, Plaintiffs are incorrect when they contend that the reference to "creditor" in section 303(c) does not comport with the statutory definition. After an involuntary petition is filed, a case is commenced pursuant to section 303(a)-(b), and all creditors' then-existing claims will have arisen before the order for relief, regardless of whether the order for relief is later entered.

With respect to section 502(a), which provides that a creditor of a general partner of a chapter 7 partnership debtor can object to claims against the partnership, Plaintiffs argue that a creditor of a general partner is not a creditor of the debtor and therefore the definition of "creditor" cannot apply. Franklin Opp.

29. This, again, is incorrect. Pursuant to section 723(c)-(d), the trustee of the partnership debtor is supposed to collect from the general partners any deficiency in assets to pay the partnership creditors, and if the trustee collects too much, the general partners have claims for returns of the surplus. A creditor of the general partner therefore has contingent claims against the partnership, which qualify as "claims" under section 101(5). *See, e.g., Woburn Assocs. v. Kahn* (*In re Hemingway Transp., Inc.*), 954 F.2d 1, 8 n.9 (1st Cir. 1992).

Finally, section 101(12A)(C) likewise invokes the statutory definition of "creditor." That provision defines a "debt relief agency" to exclude "creditors" of the assisted person. Plaintiffs claim that debt relief agencies can counsel assisted persons before they become debtors under the Bankruptcy Code, and therefore a creditor of an assisted person cannot be limited to creditors of assisted persons who become debtors. Franklin Opp. 29-30. Plaintiffs are again wrong. The only provision of the Bankruptcy Code regulating debt relief agencies is section 528 in chapter 5, which by its terms applies only in "cases commenced" after April 20, 2005. In turn, section 103(a) makes chapter 5 apply in chapter 7, 11, 12, and 13 cases. Therefore, section 528 can be enforced only after a bankruptcy case exists, at which time the assisted person will be a debtor and any "creditors" of the assisted person will meet the statutory definition because they will be creditors of the debtor.

16

F.  Even If the Construction of Section 903(1) Presented a Close
    Question (Which It Does Not), the Presumption Against Preemption
    Controls.

Even if there were doubts concerning the statutory meaning of section 903,

the presumption against preemption puts to rest any notion that Congress intended

to bar Puerto Rico from passing the Recovery Act.

"Courts start with the assumption that the historic police powers of the

States are not to be superseded by Federal Act unless that is the clear and manifest

purpose of Congress." *Mass. Ass'n of Health Maintenance Orgs. v. Ruthardt*, 194

F.3d 176, 179 (1st Cir. 1999).[7]  "[W]here the text of a preemption clause is

ambiguous or open to more than one plausible reading, courts have a duty to accept

the reading that disfavors preemption." *N.Y. State Restaurant Ass'n v. N.Y.C. Bd.*

*of Health*, 556 F.3d 114, 123 (2d Cir. 2009).  For Plaintiffs to prevail, they must

show that the words chosen by Congress clearly and unquestionably evince the

legislature's intent to undercut the Recovery Act.  Plaintiffs cannot meet that

burden.

In section 903(1), Congress opted to preempt only State laws that affect

"creditors," a term with a fixed meaning in the statute.  11 U.S.C. § 903(1).

Plaintiffs would have this Court conclude that Congress deliberately employed the

---

[7] This presumption applies equally to Puerto Rico laws.  *See Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 323 (1st Cir. 2012).  This disproves any notion that Puerto Rico has "no reserved sovereignty vis-à-vis the federal government." BlueMountain Opp. 47-48 n.10; *see also* Franklin Br. 42.

17

word "creditor" in section 903(1) but silently intended for "creditor" to have a broader meaning than what Congress gave it in the Bankruptcy Code. That hardly constitutes the "manifest" preemptive intent required to overcome the presumption against preemption. *Cf. Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 77 (1st Cir. 1997).

Recognizing that they cannot surmount the presumption against preemption, Plaintiffs are forced to argue that the presumption does not apply in this case. But Plaintiffs' suggestion that the presumption does not apply because insolvency laws do not fall within a state's historic police power is incorrect. *See* BlueMountain Opp. 25. States have long passed laws governing the orderly restructuring of the debts of insolvent parties. For nearly two centuries the Supreme Court has recognized the inherent power of the States to pass insolvency laws, including those governing insolvent municipalities, as part of their police powers. *See Faitoute*, 316 U.S. at 513-14 (holding that a state retains a "police power" concerning "the maintenance of its political subdivisions and for the protection not only of their credit but of all the creditors"); *see also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978); *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 444 (1934); *Sturges v. Crowninshield*, 17 U.S. 122, 199 (1819) (noting that the "constitution does not grant to the states the power of passing bankrupt laws, or any other power; but *finds them in possession of it*" (emphasis added)).

18

Indeed, states unquestionably hold the power to create their own insolvency laws governing banks and insurance companies, which are ineligible for federal bankruptcy relief. *See* GDB Opening Br. 33-36.

To be sure, a state's power to pass laws governing the debts of insolvent parties is constrained by the Contract Clause. Franklin Opp. 38-41. But that is irrelevant. The limitations of the Contract Clause do not eliminate a state's police power to pass insolvency laws any more than the protections of the First Amendment eliminate a state's police power to proscribe criminal acts. In both cases, the Constitutional provisions may place limits on the police power, but they do not alter the fact that the power that exists in the first place.

Plaintiffs likewise miss the mark when they argue that the presumption does not apply in the context of bankruptcy laws because the federal government has regulated insolvency in the past. *See* BlueMountain Opp. 25. That position has been squarely rejected by at least two circuits. *In re Federal-Mogul Global Inc.*, 684 F.3d 355, 365 (3d Cir. 2012) ("This strong presumption against inferring Congressional preemption also applies in the bankruptcy context." (quotation marks omitted)); *Pac. Gas & Elec. Co. v. California*, 350 F.3d 932, 943 (9th Cir. 2003) (holding that presumption applies in bankruptcy context). Although BlueMountain attempts to distinguish these precedents on the ground that those cases involved "nonbankruptcy state law," BlueMountain Opp. 26 n.5, nothing in

the jurisprudence of the Third or Ninth Circuits supports such a distinction.  *See,*

*e.g.*, *Integrated Solutions , Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493

(3d Cir. 1997).

Plaintiffs' primary support for its contrary position—*United States v. Locke*,

529 U.S. 89, 108 (2000)—is inapposite.  In *Locke*, the Supreme Court refused to

apply the presumption against preemption because the issue was the federal

government's control over the design of oil tankers navigating federal waters—an

issue that traditionally has fallen within the federal purview.  Here, by contrast,

Congress has intentionally decided not to impose a federal bankruptcy regime on

Puerto Rico municipalities.  Moreover, the presumption applies in favor of a state

law governing insolvency, which has traditionally been an area of state concern.

G.    Plaintiffs' Other Attempts to Evade the Plain Language of Section 903
        Similarly Fail.

Plaintiffs raise a series of other reasons why the Court should disregard the

statutory text; all of these contentions lack merit.  Plaintiffs' notion that the Court

can discard the current definition of "creditor" in section 101(10) in favor of the

1946 definition is entirely unsupported.  Franklin Opp. 26-28; BlueMountain Opp.

34-35.  As Plaintiffs observe, Congress has amended the definition of "creditor" on

two occasions since 1946.  Franklin Opp. 26; BlueMountain Opp. 35.  There is no

basis for this Court to ignore those amendments and invoke an outmoded statutory

definition from the 1946 code.

It is of no moment that in 1976, Congress described an amendment to the definition of "petitioner" as "for convenience only."  Franklin Opp. 26; BlueMountain Opp.  35.  Congress did not say that its 1976 amendment to the "creditor" definition was "for convenience."  Nor did it say that *any* of its 1978 definitional amendments (including yet another amendment to "creditor") was for "convenience."  The 1976 and 1978 amendments to "creditor" therefore cannot be assumed to have had no effect.

In any event, Plaintiffs' view of the 1946 definition of "creditor" is flawed. Several provisions of the 1946 statute necessarily limited the definition of "creditor" to creditors in bankruptcy cases.  Indeed, the 1946 statute frequently referred to a creditor as "creditor of the petitioner." Act of July 1, 1946, ch. 532, Pub. L. No. 79-481, 60 Stat. 409, § 83(a)-(c), (e) (1946).  Moreover, the meaning of "creditor" is clear today.  *See* 11 U.S.C. § 101(10).  If that definition has not been meaningfully changed since 1946 (as Plaintiffs suggest), then that must be because the 1946 definition corresponds to today's definition.[8]

Franklin's contention that "minor definitional amendments" concerning "creditor" cannot enact a "fundamental[] transform[ation]" of the Bankruptcy Code suffers from two fatal defects.  Franklin Opp. 27.  First, the self-serving description

---

[8] This appeal does not concern "implied repeal."  Franklin Opp. 34-38.  The issue is not whether certain amendments to the Bankruptcy Code repealed other provisions, but rather what the Bankruptcy Code means when its provisions are construed holistically.

of a statute's new wording as a "minor definitional amendment" has no bearing on the meaning of the amendment.  Second, it is Plaintiffs who divine from a "minor definitional amendment" to "State" in 1984 the revolutionary result of insolvent Puerto Rico municipalities being left with no recourse under federal or state law.

Finally, Plaintiffs' citation to *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988), has no application here.  In *Timbers* there was nothing in the statute providing whether the "adequate protection" requirement included a requirement to pay interest on undersecured claims.  The court ruled that it would not impose such a requirement without legislative history showing Congress intended to impose that new requirement.  Here, the issue is enforcing the precise terms of the definitions of "creditor" and "debtor," as opposed to reading something into the statute that is not there.

At bottom, section 903 by its plain terms does not preempt the Recovery Act, and giving effect to the provision's plain meaning does not lead to any absurd results.  Plaintiffs have therefore not overcome the presumption that the Recovery Act can coexist with federal law.

## II.   THE LEGISLATIVE HISTORY DOES NOT SUPPORT PLAINTIFFS' POSITION.

Having no support in the text or structure of the Bankruptcy Code, Plaintiffs argue that the legislative history shows that Congress *actually* intended to preempt Puerto Rico from passing the Recovery Act even though section 903 *says* the opposite.  Nevertheless, "[w]here the text of a statute is clear, as it is here," it is improper for a court "to consider the act's legislative history to divine Congress's intent."  *Telecomms. Regulatory Bd. of P.R. v. CTIA-Wireless Ass'n*, 752 F.3d 60, 66 (1st Cir. 2014); *see also Lamie v. United States*, 540 U.S. 526, 534 (2004).

In any event, even if the legislative history could somehow trump the statutory text, that history refutes Plaintiffs' position that Puerto Rico is preempted from passing the Recovery Act.

### A.   Plaintiffs Focus on the Wrong Legislative History.

Plaintiffs' myopic focus on the 1946 history of section 903(1) misses the critical question in this appeal, namely what Congress intended in 1984 when it made Puerto Rico municipalities ineligible for chapter 9.  On this point, there is simply no legislative record:  As Plaintiffs concede, Congress gave no indication why it was removing Puerto Rico's municipalities from chapter 9's purview.  Franklin Opp. 36.  It is thus pure speculation on the part of Plaintiffs that the 1984 Congress wanted to wield direct control over municipal bankruptcies in the Commonwealth.  Franklin Opp. 43-45; BlueMountain Opp. 50-51.

23

Based on the foregoing, it is more than plausible that Congress deprived Puerto Rico of chapter 9 to allow the Commonwealth to pass its own municipal bankruptcy laws, which principles of field preemption would have prohibited as long as chapter 9 remained available. *See* Point III, *infra*. After all, never before in history had Congress decreed that any entity was ineligible for bankruptcy relief under both federal and local law, so it is difficult to fathom that Congress would have intended to treat Puerto Rico municipalities in such an unprecedented manner without any legislative history to explain its maverick intent. *See Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) ("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." (quotation marks omitted)).

At best, then, the relevant legislative history is inconclusive.[9]  Accordingly, even if it were appropriate to resort to legislative history, the history here is plainly "too equivocal to overcome the plain meaning of the text" of the Bankruptcy Code. *Federal-Mogul,* 684 F.3d at 374 (interpreting Bankruptcy Code); *see also Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 698 (1st Cir. 1994)

---

[9] Plaintiffs try to minimize the untenable position that Puerto Rico finds itself in by contending that the Commonwealth can simply negotiate with its creditors or seek relief from Congress.  Franklin Opp. 44; BlueMountain Opp. 48-51.  That assertion completely misses the point that the district court's decision for the first time in history leaves a set of insolvent American municipalities (those in Puerto Rico and the District of Columbia) with no protections under either state or federal law.  The options identified by Plaintiffs are simply not viable alternatives to debt reorganization.

("[L]egislative history that is in itself inconclusive will rarely, if ever, overcome the words of a statute.").

    B.    <u>Plaintiffs Mischaracterize the Legislative History.</u>

The legislative history cited by Plaintiffs fails to support the notion that states whose municipalities are ineligible for chapter 9 are preempted from enacting their own municipal insolvency laws. Plaintiffs primarily rely on snippets of the 1946 legislative record of what came to be codified as section 903(1). But the 1946 version of section 903(1) did not exclude any municipalities; the 1946 Congress therefore expressed no opinion on the question at bar, namely whether municipalities excluded from chapter 9 could be protected under state law.

Plaintiffs nonetheless speculate that the 1946 Congress would have wanted to preempt the Recovery Act. In support, they cite the original legislative history of section 903(1). However, Congress's purported concern was that States might "have their bankruptcy laws *running right along at the same time* as our Federal bankruptcy law." *Hearings on H.R. 4307 Before the Special Subcomm. on Bankr. & Reorg. of the H. Comm. on the Judiciary*, 79th Cong. 16 (1946) (emphasis added). A congressional desire to preempt state bankruptcy laws that cover the same subject matter as federal law is a far cry from an intent to preempt state laws that protect entities with no recourse under federal law.

25

Plaintiffs also trumpet a statement in the 1946 legislative record to the effect that a municipal creditor should have its debt adjusted "[o]nly under federal law." Franklin Opp. 18; BlueMountain Opp. 4 (citing H.R. Rep. No. 79-2246 (1946)). But Congress there merely expressed its intent based on what existed at a time when federal law was available to all municipalities. Plaintiffs also conveniently deemphasize the remainder of that quote, in which the author of the report contemplated that section 903(1) would apply only to the "48 states,"[10] not Puerto Rico. *Id.* ("[A] bankruptcy code under which bondholders of a municipality are required to surrender or cancel their obligations should be uniform throughout the 48 states . . . ."). If H.R. Rep. No. 79-2246 is dispositive of congressional intent in 1946, as Plaintiffs posit, then the 1946 Congress did not intend for section 903(1) to apply to the Commonwealth.

Finally, reference to "48 states" shows that "uniformity" did not include the territories. Moreover, in 1984, Congress determined that it was unnecessary to have the national municipal bankruptcy law apply uniformly to Puerto Rico and the District of Columbia when it rendered their municipalities ineligible for chapter 9. *See* 11 U.S.C. § 101(52). Any concern with "uniformity" is therefore outdated and cannot trump the statutory text.

---

[10] In 1946, Alaska and Hawaii had not yet become states. Thus, the legislative history referred to 48 states and did not refer to any territories.

## III.   THE RECOVERY ACT IS NOT BARRED BY FIELD PREEMPTION.

In a final thrust, BlueMountain argues that even if the Recovery Act is not expressly preempted, it is unconstitutional under principles of field preemption. BlueMountain Opp. 53-57.  Notably, not even the district court adopted that position.  *See* GDB Opening Br., Add. 44-45.  That is because the position has no merit:  Under longstanding principles, field preemption does not prevent a state from passing laws that protect insolvent entities that have no recourse under federal law.

The most basic premise of preemption law is that it turns on Congressional intent.  *Arizona v. United States,* 132 S. Ct. 2492 (2012).  When Congress expressly rendered Puerto Rico's municipalities ineligible for chapter 9, it expressed its intent not to occupy that field in Puerto Rico.  Just as the Supreme Court has approved reorganizations of banks, insurance companies, and building and loan associations under state laws when these entities are ineligible to invoke federal bankruptcy law, there is no basis to believe the preemption analysis comes out differently when municipalities are rendered ineligible.

In the bankruptcy context, field preemption turns on whether the entity covered by state law is eligible for federal protection.  Indeed, early federal bankruptcy laws were typically of limited duration.  Accordingly, state laws covering the same subject matter as the federal laws were not preempted but rather

27

were "suspended" and later "revived" when the federal law would sunset.  *See,*

*e.g.*, *Butler v. Goreley*, 146 U.S. 303 (1892); *Tua v. Carriere*, 117 U.S. 201, 209

(1886).  When federal bankruptcy laws became permanent, courts understood that

states were permitted to protect entities ineligible for federal relief.  *See, e.g.*, *R.H.*

*Herron Co. v. Superior Court*, 68 Pac. 814, 815 (Cal. 1902) (holding that state

insolvency law remained in force with respect to mining company since it was

ineligible for federal bankruptcy relief).  Today, entities like banks and insurance

companies are commonly given bankruptcy protection under state law without

running afoul of field preemption because those entities are excluded from the

federal Bankruptcy Code.  *See* 11 U.S.C. § 109(b) (excluding banks and insurance

companies from federal protection); *Neblett v. Carpenter*, 305 U.S. 297, 305

(1938) (upholding California law governing insolvent insurance companies); *Doty*

*v. Love*, 295 U.S. 64, 70-74 (1935) (upholding Mississippi bank reorganization

statute); *see also* GDB Opening Br. 34-36.[11]

Plaintiffs are therefore plainly wrong when they argue that Congress has

preempted the entire field of bankruptcy law.  BlueMountain Opp. 54.  Plaintiffs'

citation to *International Shoe* likewise misses the mark.  *Int'l Shoe Co. v. Pinkus*,

---

[11] Under 1910 federal bankruptcy law, banks, insurance companies, and municipalities were excluded from the federal bankruptcy scheme so that they could be covered under state law expressly because Congress considered them "quasi-public corporations" charged "with duties to the public."  43 Cong. Rec. 2011 (Feb. 6, 1909).

278 U.S. 261 (1929). There, the Court found an Arkansas bankruptcy law

preempted because the state-law debtor was eligible for federal relief.  *Id.* at 264-

65.  Since Puerto Rico municipalities are ineligible for federal relief, *International*

*Shoe* is inapposite.[12]  At bottom, Congress opened the door for Puerto Rico to

legislate in the field of municipal bankruptcy when it opted to exclude Puerto Rico

municipalities from chapter 9 protection.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be

reversed.[13]

---

[12] Nor is Plaintiffs' cause bolstered by their citation to *In re Weinstein*, 164 F.3d 677, 682-83 (1st Cir. 1999).  There, as in *International Shoe*, preemption was found because the state-law debtor could have filed for federal protection.

[13] If portions of the Recovery Act are deemed to be preempted, those portions should be severed and the remainder of the statute left intact.  *See* GDB Opening Br. 13 n.3.  Entire portions of the Act, including the foreclosure provision in § 307, are not challenged in this litigation and thus should not have been invalidated by the district court.  Plaintiffs are wrong when they contend that GDB forfeited its severability argument.  Franklin Opp. 15 n.12; BlueMountain Opp. 52 n.15.  GDB argued below that the Recovery Act is constitutional in its entirety; by implication, GDB argued in support of the validity of each provision in the Act.  *Cf. Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011) (explaining that "the greater includes the lesser.").

April 29, 2015                Respectfully submitted,

PROSKAUER ROSE LLP

By: /s/ Martin J. Bienenstock

Martin J. Bienenstock
Mark D. Harris
Sigal P. Mandelker
Philip M. Abelson
Ehud Barak
11 Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

John E. Roberts
Andrea G. Miller
One International Place
Boston, MA 02110
Tel:  (617) 526-9600
Fax:  (617) 526-9899

*Attorneys for Defendants-Appellants Melba Acosta-Febo, as Government Development Bank for Puerto Rico Agent, and John Doe, in his official capacity as employee or agent of the Government Development Bank for Puerto Rico*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE
REQUIREMENTS**

     1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

   xx   The brief contains 6,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

       The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

     2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

   xx   The brief has been prepared in a proportionally spaced typeface using  MS Word 2002  in a 14point font or

       The brief has been prepared in a monospaced typeface using MS Word 2002 in a ___ characters per inch_____ font.

April 29, 2015                                                 s/ Martin J. Bienenstock
                                                  Attorney for Defendants-Appellants

<u>CERTIFICATE OF FILING AND SERVICE</u>

I,  Mariana Braylovskiy, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

April 29, 2015, the foregoing Reply Brief for Defendants-Appellants Melba

Acosta-Febo in 15-1271 and John Doe in 15-1272 was filed through the CM/ECF

system and served electronically on the individual registered on the courts

CM/ECF system.


The required copies will be forwarded to the court upon approval.


/s/ Mariana Braylovskiy
Mariana Braylovskiy